IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT DE FRANCHESCHI, ET AL., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:09-CV-1667-K |
| BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP, ET AL., | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion for Summary Judgment, filed November 19, 2010. After consideration of the motion, response, reply, summary judgment record, and the applicable law, the court **grants** the motion, and dismisses Plaintiffs' claims **with prejudice**.

I.  **Factual and Procedural Background**

The majority of the facts presented herein are undisputed; however, where they are disputed, they are presented in the light most favorable to Plaintiffs. In January 2007, Plaintiffs Robert DeFranceschi and Elena Riedo (collectively, "Plaintiffs") purchased a property located at 3741/43 Northridge Drive, Irving, Texas (the "Property"). The purchase price for the Property was $232,500. Plaintiffs provided a $58,150 down payment, and financed the remainder of the purchase price with a

1

$174,350 loan from Greenpoint Mortgage Funding, Inc. ("Greenpoint"). Plaintiffs' monthly payments on the promissory note to Greenpoint were $1,130.83. In conjunction with the purchase of the Property, Plaintiffs also executed a Loan Agreement Addendum providing that "[t]he rights and obligations of Borrower and Lender shall be determined solely from the written Loan Agreement" and that "[t]he Loan Agreement may not be varied by any oral agreements or discussions that occur before, contemporaneously with, or subsequent to the execution of the Loan Agreement."

Plaintiffs' loan was assigned to U.S. Bank in January 2007, and in December 2008, Defendant BAC became the loan servicer for the loan. At that point, Plaintiffs had failed to make at least one monthly principal and interest payment, and the loan was in default. Meanwhile, Plaintiffs contend that during 2008, BAC incorrectly charged them for force-placed insurance coverage on the property, causing the monthly payments to increase. After Plaintiffs complained, BAC eventually removed the force-placed insurance, but Plaintiffs state that BAC never fully credited their account for this error. In 2009, Plaintiffs were again charged for force-placed insurance, although they already had coverage on the Property. Plaintiffs state that they were never fully reimbursed for these charges.

On January 5, 2009 and February 17, 2009, BAC sent letters to DeFranceschi informing him that he was in default on the loan payments. DeFranceschi received both of these letters. The letters stated that if he did not cure the default on the loan, the

debt would be accelerated and the Property could be sold at a foreclosure sale. The letters also outlined various loss mitigation options, and instructed DeFranceschi to contact BAC immediately if he wanted to pursue these options. Plaintiffs made a payment of $3,070.74 on their mortgage account in February 2009, but this payment did not bring their account completely current.

DeFranceschi called BAC two times in February 2009 to discuss his mortgage account, and informed BAC that Plaintiffs were looking at options for bringing their mortgage current. At that time, he did not commit to one of the loss mitigation options offered by BAC. By June 2009, BAC had hired Barrett Daffin as its foreclosure counsel, and on June 5, 2009, Barrett Daffin sent DeFranceschi a letter informing him that the outstanding debt on the loan was approximately $27,000. Then, on June 15, 2009, Barrett Daffin sent DeFranceschi a letter notifying him that the loan had been accelerated and that a foreclosure sale on Property was scheduled for July 7, 2009.

On June 16, 2009, Plaintiffs re-contacted BAC to discuss a loan modification. At that time, they were instructed to fax in certain financial information. Plaintiffs misplaced the fax number, and called BAC again on June 22, 2009. They spoke to BAC employee Isabel Barber ("Barber"), and were again instructed to fax the information in. Plaintiffs faxed the information to the fax number provided by Barber. The information BAC received from Plaintiffs was incomplete and/or incorrect, and on June 26, 2009, BAC denied Plaintiffs' application for a loan modification.

3

Plaintiffs called BAC on July 2, 2009 to make sure the Property would not be sold on July 7th. BAC representative Joshua Castro ("Castro") told them that their loan modification request had been denied because their supporting documentation was incomplete. Castro told Plaintiffs that the fax number Barber had given to them was incorrect. After consulting with his supervisor, Castro asked Plaintiffs to re-submit their loan modification documentation, and told Plaintiffs that while a loan modification was not guaranteed, BAC would not foreclose while the loan modification was being reviewed. Plaintiffs also requested a reinstatement amount from BAC, but were told that amount would have to be obtained from BAC's attorneys. Plaintiffs never re-submitted any of the needed documentation to BAC, and the Property was sold to U.S. Bank at a foreclosure sale on July 7, 2009.

During June 2009, BAC obtained three different Broker Price Opinions ("BPO") concerning the Property. Those BPOs valued the Property at $150,000, $170,000, and $211,900. At the foreclosure sale, the Property was sold for $153,000. At the time of the foreclosure sale, the total amount of the debt on the property was approximately $197,000.

Plaintiffs brought suit against BAC and U.S. Bank in state court in August 2009, bringing claims for slander of title and wrongful foreclosure, breach of contract, unreasonable collection efforts, and under the Texas Finance Code. Plaintiffs also sought an accounting, and alleged additional claims under the Texas Property Code and

4

for common law fraud. Defendants now move for summary judgment on all of Plaintiffs' claims.

II. **Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

III. **Defendants' Motion for Summary Judgment**

Defendants assert that there is no genuine issue of material fact regarding any of Plaintiffs' claims, and that therefore they are entitled to judgment as a matter of law.

5

The court will consider each of Plaintiffs' claims below.

### A. Agency

Defendants first contend that all of Plaintiffs' claims against U.S. Bank should be dismissed, because Plaintiffs have not alleged any independent wrongdoing by U.S. Bank, and base all of their claims against U.S. Bank on the alleged actions of BAC. Conversely, Plaintiffs argue that as the loan servicer, BAC was acting as U.S. Bank's agent, and thus U.S. Bank is liable to them for BAC's alleged conduct.

The law does not presume agency. *Tex. Cityview Care Ctr., L.P. v. Fryer,* 227 S.W.3d 345, 352 (Tex.App.-Fort Worth 2007, pet. dism'd [mand. dism'd] ); *Lifshutz v. Lifshutz,* 199 S.W.3d 9, 22 (Tex.App.-San Antonio 2006, pets. denied). The party alleging agency has the burden to prove its existence. *Tex. Cityview Care Ctr.,* 227 S.W.3d at 352; *Lifshutz,* 199 S.W.3d at 22. Absent actual or apparent authority, an agent cannot bind a principal. *Tex. Cityview Care Ctr.,* 227 S.W.3d at 352; *Lifshutz,* 199 S.W.3d at 22. Therefore, the court must look to the summary judgment record to determine whether Plaintiffs have set forth evidence raising a genuine issue of material fact whether BAC was acting as U.S. Bank's agent.

Actual authority includes both express and implied authority and usually denotes the authority a principal 1) intentionally confers upon an agent; 2) intentionally allows the agent to believe he possesses; or 3) by want of due care allows the agent to believe he possesses. *Tex. Cityview Care Ctr.,* 227 S.W.3d at 352; *2616 S. Loop L.L.C. v. Health*

*Source Home Care, Inc.,* 201 S.W.3d 349, 356 (Tex.App.-Houston [14th Dist.] 2006, no pet.); *Lifshutz,* 199 S.W.3d at 22. Actual authority is created through conduct of the principal communicated to the agent. *Tex. Cityview Care Ctr.,* 227 S.W.3d at 352; *Lifshutz,* 199 S.W.3d at 22.

Apparent authority arises through acts of participation, knowledge, or acquiescence by the principal that clothe the agent with the indicia of apparent authority. *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 672 (Tex.1998); *Tex. Cityview Care Ctr.,* 227 S.W.3d at 353. Certain limitations apply in determining whether apparent authority exists. *Tex. Cityview Care Ctr.,* 227 S.W.3d at 353; *Lifshutz,* 199 S.W.3d at 22. First, apparent authority is determined by looking to the acts of the principal and ascertaining whether those acts would lead a reasonably prudent person using diligence and discretion to suppose the agent had the authority to act on behalf of the principal. *Tex. Cityview Care Ctr.,* 227 S.W.3d at 353; *Lifshutz,* 199 S.W.3d at 22. Only the conduct of the principal may be considered; representations made by the agent of his authority have no effect. *Tex. Cityview Care Ctr.,* 227 S.W.3d at 353; *Lifshutz,* 199 S.W.3d at 22-23. Second, the principal must either have affirmatively held the agent out as possessing the authority, or the principal must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *Tex. Cityview Care Ctr.,* 227 S.W.3d at 353; *Lifshutz,* 199 S.W.3d at 23. Finally, a party dealing with an agent must ascertain both the fact and the scope of the agent's authority, and if the party deals with the agent

7

without having made such a determination, she does so at her own risk. *Tex. Cityview Care Ctr.,* 227 S.W.3d at 353; *Lifshutz,* 199 S.W.3d at 23.

Plaintiffs have set forth evidence raising a material issue of fact whether BAC, as the loan servicer, acted as an agent for U.S.Bank, the mortgagee. Therefore, the court will not dismiss the claims against U.S. Bank on this basis. However, because the court has determined below that there is no genuine issue of material fact regarding Plaintiffs' substantive claims against both Defendants, this issue is not outcome-determinative.

### B.     Slander of Title

Defendants have moved for summary judgment on Plaintiffs' claim for slander of title. Plaintiffs concede in their response that they do not have a cause of action for slander of title. Accordingly, the court will enter summary judgment on this claim.

### C.     Breach of Contract

Plaintiffs claim that Defendants breached the Deed of Trust as well as the alleged oral contract to postpone the July 7, 2009 foreclosure sale. To prevail on their breach-of-contract cause of action, Plaintiffs must show: 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages sustained as a result of the breach. *B & W Supply, Inc. v. Beckman,* 305 S.W.3d 10, 16 (Tex.App.-Houston [1st Dist.] 2009, pet. denied); *Winchek v. American Express Travel Related Servs. Co.,* 232 S.W.3d 197, 202 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

8

### 1. Deed of Trust

Defendants argue that this claim must fail because Plaintiffs cannot show that they complied with the contract and that Defendants' actions caused them injury. In response, Plaintiffs allege that compliance was impossible because BAC did not provide them with the amount needed to reinstate their loan account. This argument conveniently skips past the fact that Plaintiffs were in default. It is undisputed that Plaintiffs fell behind on their mortgage payments and thus, did not perform under the contract. If they were injured by BAC's foreclosure, Plaintiffs cannot raise a material issue of fact whether this injury was caused by BAC, since the foreclosure was indisputably a consequence of their failure to pay.

Finally, to the extent that Plaintiffs contend BAC breached the Deed of Trust by failing to provide a reinstatement amount and/or incorrectly charging them for force-placed insurance, these new factual allegations are not included in Plaintiffs' pleadings, and they cannot rely on them to escape summary judgment. *See, e.g., Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.,* 203 F. Supp.2d 704, 720 (S.D. Tex. 2000) (party could not assert new claim in attempt to avoid summary judgment); *Kornman v. United States,* 2010 WL 905109, *3 n.13 (N.D. Tex 2010) (party cannot rely on an unpleaded claim or defense to avoid summary judgment); *Jacobs v. Tapscott,* 2006 WL 2728827, *8 (N.D. Tex. 2006) (same). The court will enter summary judgment on this breach of contract claim.

## 2. Oral Contract

Plaintiffs also assert that BAC breached an oral contract to postpone the July 7, 2009 foreclosure sale. BAC argues that this claim should be dismissed on summary judgment because DeFranceschi's oral discussion regarding a potential postponement of the sale did not give rise to an enforceable contract. Unlike a bilateral contract, in which both parties make mutual promises, *Hutchings v. Slemons,* 141 Tex. 448, 174 S.W.2d 487, 489 (Tex.1943), a unilateral contract is created when a promisor promises a benefit if a promisee performs, *Vanegas v. Am. Energy Servs.,* 302 S.W.3d 299, 303 (Tex.2009); *cited in City of Houston v. Williams,* ____S.W.3d ____, 2011 WL 923980, *5 (Tex. 2011). A unilateral contract becomes enforceable when the promisee performs. *Williams,* 2011 WL 923980, *5; *Vanegas,* 302 S.W.3d at 303. If the promisee does not accept the offer by performing the act the promisor requested, no unilateral contract is formed. *Robinson v. Alief Indep. Sch. Dist.,* 298 S.W.3d 321, 331 (Tex. App. – Houston [14th Dist.] 2009, pet. denied); *Johnston v. Kruse,* 261 S.W.3d 895, 898 (Tex. App. – Dallas 2008, no pet.).

Plaintiffs assert that BAC breached an alleged unilateral contract not to foreclose on July 7, 2009, because Castro told DeFranceschi on July 2, 2009 that BAC would not foreclose while Plaintiffs' loan modification application was being re-reviewed. In order for the application to be reviewed again, Plaintiffs were supposed to re-submit the financial documentation requested by BAC. It is undisputed that following their July 2 discussion with Castro, Plaintiffs never faxed in the requested documents. Therefore,

BAC contends that no unilateral contract arose, and there was no breach of such a contract by BAC. The court agrees. Furthermore, the court notes that Plaintiffs did not respond to BAC's arguments related to this claim in their summary judgment briefing, and thus it finds that Plaintiffs have abandoned this cause of action. *Black v. Panola Sch. Dist.,* 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Vela v. City of Houston,* 276 F.3d 659, 678 (5th Cir. 2001). For both of these reasons, the court finds that on this claim, the entry of summary judgment is appropriate.

### D. Anticipatory Breach of Contract

Plaintiffs state in their summary judgment response that this claim is based upon BAC's purported failure to provide them with the information they needed to reinstate their loan. As the court has stated above, Plaintiffs cannot avoid summary judgment by presenting new, unpleaded factual allegations at this stage of the litigation. *Matagorda Ventures,* 203 F. Supp.2d at 720; *Kornman,* 2010 WL 905109 at *3 n.13; *Jacobs,* 2006 WL 2728827 at *8. Accordingly, this claim must be dismissed.

### E. Unreasonable Collection Efforts

Defendants further move for summary judgment on Plaintiffs' claim for unreasonable collection efforts. The parties are in agreement that this tort is not clearly defined, and that conduct amounting to unreasonable collection efforts varies on a case-by-case basis. *EMC Mortgage Corp. v. Jones,* 252 S.W.3d 857, 868 (Tex. App. – Dallas 2008, no pet.), *citing Pullins v. Credit Exchange of Dallas, Inc.,* 538 S.W.2d 681, 683

11

(Tex.Civ.App.-Waco 1976, no writ); *Household Credit Servs., Inc.v. Driscol,* 989 S.W.2d 72, 81 n. 3 (Tex.App.-El Paso 1998, writ denied); *Connell v. Rosales,* 419 S.W.2d 673, 676 (Tex.Civ.App.-Texarkana 1967, no writ); *Ware v. Paxton,* 359 S.W.2d 897, 899–902 (Tex.1962). A more specific legal description of this tort delineates the conduct as "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *EMC,* 252 S.W.3d at 868; *Connell v. Rosales,* 419 S.W.2d 673, 676 (Tex. Civ. App.--Texarkana 1967, no writ); *Montgomery Ward & Co. v. Brewer,* 416 S.W.2d 837, 844 (Tex. Civ. App.--Waco 1967, writ ref'd n.r.e).

Taking the factual record in the light most favorable to Plaintiffs, it appears in this case that once Plaintiffs were in default, BAC sent two default letters to Plaintiffs, and later engaged counsel to undertake foreclosure proceedings. BAC's foreclosure counsel then sent Plaintiffs a letter notifying them of the approximate amount of the outstanding debt on the Property, and a second letter advising them that the loan had been accelerated and the Property scheduled for a foreclosure sale. BAC also spoke with DeFranceschi by phone a handful of times regarding the status of his loan, loss mitigation options, and Plaintiffs' application for a loan modification. It is undisputed that these telephone conversations were initiated by DeFranceschi.

The court has examined the summary judgment evidence, and finds that Plaintiffs cannot raise a material issue of fact whether any of these interactions, taken singly or as

12

a whole, amounted to a course of harassment that was willfully undertaken in order to cause Plaintiffs mental anguish and bodily harm. *EMC,* 252 S.W.3d at 868. Further, as the court has stated above, Plaintiffs cannot rely on their new allegations regarding improper force-placed insurance and/or BAC's alleged refusal to provide a reinstatement amount to avoid summary judgment on this claim. This claim must be dismissed.

F.   **Negligent Misrepresentation**

The elements of negligent misrepresentation are 1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; 2) the defendant supplies "false information" for the guidance of others in their business; 3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and 4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 686 n. 24 (Tex.2002); *Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC,* 324 S.W.3d 840, 850 (Tex. App. – Houston [14th Dist.] 2010, no pet.). Importantly, the false information complained of in a negligent misrepresentation claim "must be a misstatement of an existing fact rather than a promise of future conduct." *Scherer v. Angell,* 253 S.W.3d 777, 781 (Tex.App.-Amarillo 2007, no pet.) (*citing Miller v. Raytheon Aircraft Co.,* 229 S.W.3d 358, 379 (Tex.App.-Houston [1st Dist.] 2007, no pet.)); *see also C.E. Barker, Inc. v. FirstCapital Bank,* 2005 WL 1177910, at *4 (Tex.App.-Corpus Christi 2005, pet. denied).

13

Initially, the court notes that Plaintiffs cannot maintain their negligent misrepresentation claim based upon their new allegations regarding reinstatement figures or force-placed insurance. *Matagorda Ventures,* 203 F. Supp.2d at 720; *Kornman,* 2010 WL 905109 at *3 n.13; *Jacobs,* 2006 WL 2728827 at *8. Plaintiffs otherwise argue that BAC negligently misrepresented that it would not foreclose on the property as long as Plaintiffs re-submitted their financial information so that a loan modification could be considered. Defendants respond that this cannot be the factual basis for a negligent misrepresentation claim, because it is a promise of future conduct rather than an existing fact. *Scherer,* 253 S.W.3d at 781; *C.E. Barker,* 2005 WL 1177910 at *4. The court agrees that Plaintiffs' negligent misrepresentation claim fails, and must be dismissed.

### G. Fraud

A plaintiff seeking to prevail on a fraud claim must prove that 1) the defendant made a material misrepresentation; 2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; 3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and 4) the plaintiff suffered an injury by actively and justifiably relying on that representation. *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990); *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983).

Defendants argue that they are entitled to summary judgment on Plaintiffs' fraud claim because Plaintiffs cannot show that Defendants misrepresented a specific intention to postpone the foreclosure sale. Plaintiffs counter that Castro told them they could re-submit their application for a loan modification, and that the foreclosure sale would be delayed to August 2009 while that application was under review. Plaintiffs state, with no evidentiary support whatsoever, that Defendants "had no intention" of moving the date of the foreclosure sale, or that it was made recklessly, without knowledge of its truth.

Conclusory allegations are not sufficient to defeat a motion for summary judgment, because they are not competent summary judgment evidence. *Mace v. City of Palestine,* 333 F.3d 621, 624 n.7 (5th Cir. 2003); *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). Plaintiffs go on to assert that BAC's representations regarding the possible postponement of the foreclosure sale were "material and false" and that Defendants "obviously" intended for Plaintiffs to rely upon them, causing Plaintiffs injuries. Again, these unsupported assertions do not raise a material fact issue regarding Plaintiffs' fraud claim. *Mace,* 333 F.3d at 624; *Eason,* 73 F.3d at 1325. Further, as Defendants point out, DeFranceschi testified that he had no reason to believe BAC did not intend to postpone the foreclosure sale. Finally, it is undisputed that Plaintiffs did not re-submit the documentation requested by BAC in order to review their loan modification application again. Having failed to do so, any reliance by Plaintiffs on

Castro's alleged statements that the foreclosure sale could be delayed was not justified. *See Grant Thornton LLP v. Prospect High Income Fund,* 314 S.W.3d 913, 923 (Tex. 2010) (fraud requires plaintiff to show actual and justifiable reliance). Here, Plaintiffs' own conduct indicates that their alleged reliance was not justifiable. Defendants are entitled to summary judgment on this claim.

### H. Wrongful Foreclosure

As with Plaintiffs' other claims, Defendants contend there is no genuine issue of material fact whether BAC wrongfully foreclosed on the Property. There are three elements to a wrongful foreclosure suit: 1) a defect in the foreclosure sale proceedings; 2) a grossly inadequate selling price; and 3) a causal connection between the defect and the grossly inadequate selling price. *See Sauceda v. GMAC Mortg. Corp.,* 268 S.W.3d 135, 139 (Tex.App.-Corpus Christi 2008, no pet.); *Charter Natl. Bank – Houston v. Stevens,* 781 S.W.2d 368, 371 (Tex. App. – Houston [14th Dist.] 1989, writ denied). Plaintiffs must also show that BAC failed to comply with statutory or contractual conditions governing the foreclosure sale. *First State Bank v. Keilman,* 851 S.W.2d 914, 921-22 (Tex. App. – Austin 1993, writ denied).

BAC asserts that summary judgment is warranted because Plaintiffs cannot establish any irregularity concerning the foreclosure sale, cannot show that they are entitled to relief for wrongful foreclosure, and cannot show that the foreclosure sale was not in compliance with Texas law. Plaintiffs have not specifically responded to these

16

arguments. Instead, Plaintiffs respond that BAC is liable to them for wrongful foreclosure because it failed to provide them with a reinstatement amount, and otherwise breached the Deed of Trust. The court has previously determined that Plaintiffs cannot rely on their new allegations regarding reinstatement to avoid summary judgment, and further, has already ruled that Defendants did not breach the Deed of Trust. Plaintiffs have not raised a material issue of fact whether BAC wrongfully foreclosed. Accordingly, this claim must be dismissed.

IV. **Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is **granted**, and Plaintiffs' claims are hereby **dismissed with prejudice.**

**SO ORDERED**.

Signed April 14th, 2011.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE